UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAUREL BRENT,                              Case No. 17-12654

Plaintiff,                                 Arthur J. Tarnow
          v.                               United States District Judge

COMMISSIONER OF SOCIAL                     Stephanie Dawkins Davis
SECURITY,                                  United States Magistrate Judge

Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 13)**

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On August 14, 2017, plaintiff Laurel Brent filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Arthur J. Tarnow referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability and disability insurance benefits.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 11, 13).

### B.     Administrative Proceedings

Plaintiff filed an earlier application for a period of disability and disability

insurance benefits on March 23, 2011, alleging disability beginning on May 24,

2011.  (Tr. 19).  Administrative Law Judge Martha Gasparovich denied plaintiff benefits in a decision dated October 15, 2012.

Plaintiff filed another application for a period of disability and disability insurance benefits on July 16, 2014, alleging disability beginning on March 12, 2013.[1]  (Tr. 17).[2]  The claims were initially disapproved by the Commissioner on January 26, 2015.  (*Id.*).  Plaintiff requested a hearing and on April 18, 2016, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Dennis M. Matulewicz, who considered the case under the guidelines of *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6).  (Tr. 17-27).  In a decision dated May 5, 2016, the ALJ found that plaintiff was not disabled through the date last insured, December 31, 2013.  (Tr. 27). Plaintiff requested a review of this decision, although the request is not in the administrative record.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 20, 2017, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] Plaintiff initially alleged disability beginning on December 31, 2008, but amended the alleged onset date to March 12, 2013.  (Tr. 17).

[2] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff, born May 25, 1955, was 58 years old on the date last insured, December 31, 2013.  (Tr. 26).  She is a high school graduate with past relevant work as a direct caregiver, fast foods worker, housekeeper, and a nanny.  (Tr. 26). The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of March 12, 2013 through her date last insured.  (Tr. 20).  At step two, the ALJ found that plaintiff's adjustment disorder/major depression and polysubstance abuse in reported remission were "severe" within the meaning of the second sequential step.  (Tr. 20).  He also found plaintiff's hypertension, asthma, Hepatitis C, and back pain (in the alternative) to be nonsevere, and her back pain to be not medically determinable.  (Tr. 20).  At step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 22).

Thereafter, the ALJ adopted plaintiff's residual functional capacity ("RFC")

from the prior determination as follows:

> After careful consideration of the entire record, the
> undersigned finds that, through the date last insured, the
> claimant had the residual functional capacity to perform a
> full range of work at all exertional levels but with the
> following nonexertional limitations: simple unskilled
> work with an SVP rating of 1 or 2; working involving
> one-, two-, or three-step instructions; work with only
> occasional interpersonal interaction, contact, or
> discussion with coworkers; routine work that does not
> require changes or adaptations in work settings or duties
> more than once per month; work requiring no interaction
> or contact with the general public; jobs without
> production quotas mandating a specific number of pieces
> per hour or with a down-line coworker depending on
> claimant's productivity; and low stress environment
> defined as requiring no quick decision making and no
> quick judgment on the job.

(Tr. 23).  At step four, the ALJ found that plaintiff was unable to perform any past

relevant work.  (Tr. 30).  At step five, the ALJ denied plaintiff benefits because he

found that there were jobs that exist in significant numbers in the national economy

that plaintiff can perform.  (Tr. 26).

B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ erroneously failed to include plaintiff's

degenerative lumbar spine conditions in the RFC.  Plaintiff acknowledges that the

ALJ addressed the denial of her prior application for benefits under *Drummond*,

and concluded that there was no new and material evidence supporting a change in

plaintiff's RFC between the original denial in 2012 and her date last insured in December 2013.  (Dkt. 11, at p. 4-5).  However, plaintiff asserts that the ALJ made this determination without the benefit of having the medical evidence available to the prior ALJ.  (*Id.* at 5, n. 5).  Although the RFC ALJ Matulwiecz assessed is more "elaborate" than the prior RFC, plaintiff complains that the current RFC does not address her back impairments, which form the crux of plaintiff's argument.  (*Id.* at p. 6).

Plaintiff began treatment for her back with Dr. Blair-Watson on March 12, 2013, the amended onset date.  Plaintiff avers that she did not seek treatment for her back prior to this date because she did not have health insurance.  On examination, plaintiff demonstrated bilateral lumbosacral tenderness and paravertebral muscle spasms.  She was diagnosed with Lumbago and prescribed Vicodin.  (*Id.* at 6-7; Tr. 295).  Plaintiff saw Dr. Blair-Watson once more in 2013 not for her back but for her blood pressure medication.  At this visit, the doctor prescribed both Vicodin and Neurontin.  (*Id.* at p. 7; Tr. 297-99).  Her diagnosis changed from lumbago to chronic back pain in August 2014.  In August 2014, she began pain management treatment with Dr. Hussain, and continued with this treatment into 2016.  (*Id.* at p. 8).  Dr. Hussain diagnosed lumbosacral spondylosis with radiculopathy and sacroiliac pain, and prescribed Lumbar Epidural Steroid Injections.  (*Id.*).  A series of these injections were performed from September

through November 2014.  (Tr. 375-86).  In May 2015, Dr. Hussain performed a transforaminal block.  (Tr. 356-59).

Citing SSR 83-20, plaintiff argues that the medical findings regarding her pain in 2014 and onward relate back to the period before her date last insured because they relate to a condition that existed before the expiration of her date last insured.  (*Id.* at p. 10-11).  When it is not possible to get medical evidence that definitively shows when a disability started, plaintiff asserts that the ALJ should consider the plaintiff's allegation, work history, medical and other evidence.  (*Id.*) (citing Security Ruling 83-20, at *2).  Plaintiff also mentions that SSR 83-20 requires the ALJ to call a medical expert "when an individual claims disability and there is no development of the medical record which the ALJ can rely to ascertain onset."  (*Id.* at p. 12) (*McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006)).

Plaintiff challenges the ALJ's Step Two findings that her back pain is not a medically determinable impairment, or in the alternative, that it is non-severe.  She argues that her "lumbago" diagnosis indicates more than just back pain; it shows an abnormality of the spine.  (*Id.* at p. 12-13).  Additionally, in August 2014 Dr. Hussain diagnosed lumbosacral spondylosis with radiculopathy and sacroiliac pain. Plaintiff also contends that her April 2014 CT scan showed more than modest findings: The CT scan showed spurring of the endplates of the vertebrae most

prominently at L2-3 and L5-S1, facet degenerative changes at the L2 through S1

vertebral levels with foraminal stenosis, and a disc bulge at L4-5.  Furthermore, the

CT demonstrated degenerative conditions that would have existed prior to

December 2013, only four months after the date last insured.  (*Id.* at p. 13).

  C. <u>Commissioner's Motion for Summary Judgment</u>

  The Commissioner argues that substantial evidence supports the ALJ's

decision that plaintiff's physical impairments were not severe between March 2013

and the date last insured, and that she was not disabled during the relevant period.

(Dkt. 13, at p. 7).  The Commissioner acknowledges *Drummond* and its ruling that

that plaintiff must provide new and material evidence that her condition has

worsened since the prior decision such that she is no longer capable of substantial

gainful work activity.  The Commissioner contends that the ALJ discussed

plaintiff's allegations of back pain at Step Two, and discussed all of the relevant

medical evidence related to her back pain, both during and after the relevant

period.  (*Id.* at p. 9).  Based on his review of the evidence, the Commissioner states

that ALJ Matulewicz found that plaintiff's alleged back pain was not a medically

determinable impairment during the relevant period, or non-severe.  (*Id.* at p. 12,

13).  Thus, according to the Commissioner, the ALJ's determinations at Step Two

are supported by substantial evidence.

As to plaintiff's claim that the ALJ erred in not considering the medical evidence that was before the prior ALJ, the Commissioner points out that plaintiff cites no rule requiring the current ALJ to specifically consider that evidence. Regarding plaintiff's argument that the ALJ did not follow SSR 83-20, the Commissioner argues that the ruling applies only where the ALJ determines that the claimant is disabled and the question arises as to when the disability arose. (*Id.* at p. 16) (*Monville v. Comm'r of Soc. Sec.*, 2017 WL 4081854, at *3 (E.D. Mich. Sept. 15, 2017)). Where there is no finding that the claimant is disabled "no inquiry into onset date is required." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997). Here, ALJ Mateluwicz never found that Plaintiff was disabled, so SSR 83-20 has no bearing on her case.

The Commissioner further argues that there was no need for the ALJ to consider plaintiff's lack of health insurance when commenting on the gap in the medical records between March 2013 and February 2014. (*Id.* at p. 17). As the Sixth Circuit held in *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004), "[t]he issue of poverty as a legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition." *Id.* (citing *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990)). Here, as in *Strong*, the ALJ found that plaintiff was not under a disabling condition based on the absence of diagnostic medical evidence, specifically during the period before

her date last insured.  (Tr. 21).  The ALJ properly considered the absence of contemporaneous evidence in declining to accept Plaintiff's allegations of disabling back pain.

      D.     <u>Plaintiff's Reply</u>

Plaintiff contends that that the ALJ mischaracterized her lumbago diagnosis as merely another word for back pain, when it actually represents an abnormality of the spine.  (Dkt. 14, at p. 2-3).  Further, plaintiff contends that the ALJ and the Commissioner did not address that being prescribed narcotics for back pain indicates the existence of a medical condition of the low back.  Plaintiff also argues that the Commissioner improperly relied on the nature of Dr. Hussain's treatment when the ALJ never discussed Dr. Husain's treatment.  (*Id.* at p. 5).

      E.     <u>The Commissioner's Supplemental Authority</u>

On August 6, 2018, the Commissioner submitted supplemental authority discussing the Sixth Circuit's recent decision in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which clarified its prior decision concerning *res judicata* in *Drummond*.  (Dkt. 15).  *Earley* clarified that *res judicata* does not apply when a claimant files a subsequent application for benefits covering a different period.  *Id.*  ALJs are permitted to review prior ALJ findings, but are not bound by those prior findings.  *Id*. at *3-4.  The Commissioner argues that in the instant case, the ALJ thoroughly reviewed the evidence before

determining the RFC, and through this review the ALJ satisfied the "fresh review" standard articulated in *Earley*. Hence, notwithstanding the ALJ's adoption of the physical RFC from the prior ALJ's decision, his in-depth review of the evidence—to determine that the new impairments were non-severe and did not affect Plaintiff's functional capacity—satisfied the "fresh review" that *Earley* requires.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Analysis and Conclusions</u>

1.    *Drummond* and *Earley*

As an initial matter, plaintiff's challenge of the ALJ's decision essentially

calls into question the ALJ's consideration of alleged changes to plaintiff's

condition under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).

Thus, a discussion of its scope and contours is appropriate.  Generally, principles

of *res judicata* require that the administration be bound by a prior decision unless a

change of circumstances is proven on a subsequent application.  *Drummond* at 842

(6th Cir. 1997).  In *Drummond*, the Sixth Circuit held that Social Security

claimants and the Commissioner are barred from re-litigating issues that have

previously been determined at the administrative level.  *Drummond*, 126 F.3d at

842; *see also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner

of Social Security after a hearing shall be binding on all individuals who were

parties to such hearing.").  *Drummond* mandates that absent evidence that a

claimant's condition has improved, findings issued by an ALJ as part of a prior

disability determination are binding on an ALJ in a subsequent

proceeding.  Drummond, 126 F.3d at 841.

Suggesting that the case law that has developed under *Drummond* has

interpreted the ruling more broadly than it was intended, the Sixth Circuit recently

clarified the reach of *res judicata* principles in its decision in *Early* – and notably

16

with only a passing reference to AR 98-4(6)'s "new and material evidence"

requirement.  *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir.  2018).

In *Earley*, the court stated,

> "Res judicata bars attempts to relitigate the same claim,
> but a claim that one became disabled in 1990 is not the
> same as a claim that one became disabled in
> 1994."  *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir.
> 1998).  Just so here.  Had Earley filed a second
> application for disability benefits for . . . the same period
> covered by her first application, the ALJ could have
> correctly rejected it on res judicata grounds and the
> principles of finality that it supports.  But Earley did not
> do that.  She filed a new application for a new period of
> time.  When an individual seeks disability benefits for a
> distinct period of time, each application is entitled to
> review.  There is nothing in the relevant statutes to the
> contrary.  And res judicata only "foreclose[s] successive
> litigation of the very same claim."  *New Hampshire v.
> Maine*, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d
> 968 (2001).

*Id.* at 933.  Principles of res judicata "do not prevent the agency from giving a

fresh look to a new application containing new evidence or satisfying a new

regulatory threshold that covers a new period of alleged disability while being

mindful of past rulings and the record in prior proceedings."  *Id.* at 931.

Here, the ALJ issued his decision in 2016 with a pre-*Earley* understanding

of *Drummond*, which resulted in his conclusion that he was bound by the prior

decision.[3]  (Tr. 25).  Nevertheless, a thorough review of the ALJ's decision and the record before him reveals that the ALJ did indeed conduct a "fresh look" at the evidence in the record, satisfying *Earley*.  Specifically, at Step Two of the sequential analysis, in addition to discussing plaintiff's other impairments, the ALJ incorporated extensive discussion of the evidence in the record to determine whether plaintiff's back pain was a medically determinable impairment.  The prior ALJ found that that there were no objective findings regarding back pain.  Since that decision the record contains doctor's visits for back pain, a CT scan, and medication and procedures conducted to help with the pain.  Having reviewed this new evidence thoroughly to make his own determination at Step Two, the ALJ gave a "fresh look" at the evidence on her back pain.

The same is true for plaintiff's mental impairment.  The ALJ discussed evidence ranging in date from 2013 to 2015, after the prior decision.  Although the ALJ determined that he was bound by the prior decision because there was no new and material evidence of a change in plaintiff's mental condition, the ALJ did not simply rely on principles of *res judicata*.  Instead, the ALJ noted that the objective evidence did not show any significant mental deficits (Tr. 24), and that mental

---

[3] Though notably, he advised plaintiff at her hearing, "And I want you to understand that it is a new decision, I'm not bound by the prior agency's decision that denied your claim.  My decision will be based upon the testimony I get from you, our vocational expert, all the exhibits we have in the file.  But primarily, it's based upon what Social Security laws and regulations."  (Tr. 33).

status examinations showed that she had intact recent and remote memory, intact

judgment and insight, full orientation, normal or euthymic mood, and no loss of

concentration.  (*Id.*).  The ALJ reviewed treatment records from Community

Network Services reflecting treatment dating back to 2011, just as the prior ALJ

had done – providing a fresh look for evidence of disability.  (*See, e.g.* Tr. 25, 75,

247, 270, 277).[4]  Additionally, in discussing plaintiff's GAF scores, the ALJ noted

that the treatment history and objective evidence do not support a finding of

serious symptoms and related impairments consistent with a GAF score of 50.  (Tr.

25).  As such, the ALJ was not simply reviewing the evidence to determine change

in condition; rather, he also looked at the evidence to determine plaintiff's RFC,

which plaintiff acknowledges is more elaborate than the prior RFC.  (*Compare* Tr.

23 *with* Tr. 74); *see Kamphaus v. Comm'r of Soc. Sec.*, 2018 WL 3800243, at *5

(E.D. Mich. July 23, 2018) (After reviewing the ALJ's discussion of new evidence

concerning an impairment in light of *Earley*, the court stated, "It is clear to the

Undersigned that ALJ Deming did not simply apply *res judicata* principles and

adopt ALJ Kalt's findings "lock, stock and barrel," but, instead, gave new

---

[4] The ALJ's consideration of this evidence would seem to undercut to some degree plaintiff's argument that he failed to consider the same evidence that the prior ALJ reviewed. While it cannot be concluded that he reviewed all of the same evidence, his reference to CNS records of treatment dating back to 2011 indicates that he did evaluate some of the same information concerning plaintiff's condition.

consideration and analysis to the June 2013 MRI.").  Because the ALJ gave the evidence a "fresh look," the undersigned will address plaintiff's arguments.

>       2.      Step Two

Under the regulations, the ALJ must consider whether a claimant's impairment is a medically determinable impairment at Step Two.  *See* 20 C.F.R. § 404.1520.  A medically determinable impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Jones v. Comm'r of Soc. Sec.*, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017), *report and recommendation adopted sub nom. Jones v. Berryhill*, 2017 WL 1196179 (S.D. Ohio Mar. 31, 2017) (citing 20 C.F.R. §§ 404.1505, 404.1508, 404.1520(a)(4)(ii) and 404.1527(a)(1)).  "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."  20 C.F.R. § 404.1521; *see also Tolbert v. Comm'r of Soc. Sec.*, 2012 WL 4176876, at *4 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL 4165649 (E.D. Mich. Sept. 18, 2012) (citing Social Security Ruling 96-4p, 1996 WL 374187 at *1) ("A diagnosis establishes medically determinable impairment only where it is supported by objective medical evidence.").

Here, the record evidence does not demonstrate that plaintiff became functionally limited due to her back pain at any time before her date last insured. On the alleged onset date, plaintiff presented to her physician complaining of low back pain, but noted that there was no radiation of pain. (Tr. 294). The physician noted that there was no injury to her back, and that symptoms were aggravated by extension, flexion, and lifting. The physician also noted that her back pain was relieved by medication, and assessed her symptoms as lumbago. (*Id.*). She presented again to her physician in April 2013, but the record concerning that visit contains no notation of back pain. (Tr. 297). In her next office visit, which occurred in February 2014, her physician noted that plaintiff complained of back pain, that plaintiff reported that the symptoms were aggravated by bending, descending stairs, extending, lifting, sitting, twisting, and walking, but that symptoms were relieved by heat, lying down, and with pillows. (Tr. 300). Her physician also noted on a musculoskeletal exam that plaintiff's problem was "back pain with bending," that she had normal musculature, and no joint deformities or abnormalities, and normal range of motion for all four extremities for age. (Tr. 302). In April 2014, her physician noted that plaintiff's back pain was getting worse with radiating pain, tingling, and numbness to bilateral legs, and that a 2011 x-ray showed degenerative changes to her spine. (Tr. 304). In the musculoskeletal exam, there was no cervical or thoracic spine tenderness and those areas had

normal mobility and curvature.  However, her lumbar spine was tender and had

severe pain with motion.  (Tr. 306).  Further, her lumbar curvature had no

abnormality, but had limited flexion and limited extension of the back.  (*Id.*).  The

physician increased plaintiff's as-needed Norco dosage.  (Tr. 307).  An April 2014

CT scan showed "[m]ultilevel degenerative changes of the lumbar spine . . ., most

prominent at the L4-5 level where there is mild right and moderate left foraminal

stenosis."[5]  (Tr. 329).  After the CT scan the physician assessed lumbago, and

noted that plaintiff wanted a second opinion on the CT scan.  (Tr. 310).  In May

2014, the diagnosis was still lumbago, and plaintiff was advised to see the

orthopedist as scheduled.  (Tr. 312).  However, in June 2014, six months after DLI,

her physician stated that plaintiff was managing her back pain with medication.

(Tr. 314).  In July 2014, her diagnosis was changed to chronic pain syndrome, but

her physician also noted that her pain medication was effective in controlling her

pain.  (Tr. 319).  In August 2014, plaintiff stated that her orthopedic doctor

indicated that he was unable to find any specific problem with her low back, but

---

[5] Plaintiff argues that this CT scan shows that plaintiff had degenerative conditions prior to her date last insured.  While the medical evidence during the relevant period does not suggest any significant problems, even if plaintiff had degenerative conditions prior to the date last insured, the existence of a diagnosis says nothing of the functional limitations associated with the diagnosis.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a disease] says nothing about the severity of the condition."); *Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").  As such, that she may have had degenerative conditions during the relevant period does not mean that she was disabled during that time.

her physician referred her to pain management.  (Tr. 320-21).  As is clear from this medical evidence, the record does not contain objective medical evidence establishing a physical impairment in her back during the relevant period.  We do not see objective evidence until April 2014.  As such, it would appear that the ALJ was correct in his determination that her low back pain was not a medically determinable impairment.  *See Tolbert*, *supra*.

Plaintiff suggests that it was error for the ALJ to ignore the fact that plaintiff did not have health insurance until sometime in 2013 or 2014, and that is why she does not have many medical records for the relevant period.[6]  (Dkt. 11, at p. 14). Plaintiff cites no authority that the ALJ is required to discuss a claimant's lack of health insurance when there is a gap in the medical record.  Failure to specifically address a claimant's lack of health insurance is not necessarily cause for remand. For example, in *Owings v. Colvin*, 133 F. Supp. 3d 985, 966 (M.D. Tenn. 2015), the ALJ "failed to notice" the plaintiff's lack of health insurance.  However, the record showed that the plaintiff received continuous medical care/medications during the relevant period.  *Id.*  The court stated, "Inasmuch as the record shows that plaintiff's access to medical care was not adversely affected by a lack of

---

[6] Plaintiff's discussion on this point is less than clear.  At the administrative hearing, she testified that she did not have health insurance until the end of 2013 or middle of 2014.  (Tr. 50). In her brief, she states that she did not seek treatment for her back until March 2013, because she did not have health insurance until that time.  (Dkt. 11, at p. 7).  Her brief suggests she had insurance starting on the alleged onset date, while her testimony suggests she did not have insurance until much later.

insurance, and absent any factual allegations to the contrary, any error on the ALJ's part in not mentioning plaintiff's lack of insurance is harmless." *Id.*; *see also Caseldine v. Berryhill*, 2017 WL 2572802, at *2 (M.D. Tenn. June 13, 2017) ("While it is recognized that a lack of insurance can conceivably reduce access to medical care, the claimant has not satisfactorily shown how his access has been eliminated altogether.  Specifically, he has failed to show that he made any effort to ascertain whether medical services were available for persons of indigent means, such as the use of a county health department, or to seek care from such providers.").  Here, plaintiff received medical care in March and April 2013, and then again starting in February 2014.  Plaintiff received prescription medication in the March 2013 visit (it is unclear whether she was on those same medications before then) and apparently took those medications continuously (she does not claim that she stopped taking her medication).  She does not allege any adverse effect of her lack of insurance.  As such, it would seem that her lack of insurance did not adversely affect her medical care.

Additionally, the ALJ did not simply rely on a gap in plaintiff's health care to conclude that her back pain was not medically determinable or nonsevere.  The ALJ also discussed the medical evidence beginning in 2014 (when she presumably had health insurance again) which showed modest findings in a CT scan and that in August of 2014 her orthopedist was unable to find a specific problem with

plaintiff's low back, among other medical findings.  (Tr. 21).  *See, e.g.*, *Hicks v. Comm'r of Soc. Sec.*, 2014 WL 4748356, at *8 (S.D. Ohio ) (Harmless error in credibility analysis where did not indicate that he considered the plaintiff's lack of insurance, but otherwise based the credibility determination on various factors, not just an inability to afford medical treatment).  Moreover, it is reasonable to expect some medical evidence demonstrating disability when the plaintiff claims she is disabled.  *See Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment.  A failure to do so may cast doubt on a claimant's assertions of disabling pain.");  *Clayton v. Astrue*, 2013 WL 427407, at *5 (S.D. Ohio Feb. 1, 2013) (Noting that, "although Plaintiff's [sic] contends that she failed to obtain mental health treatment due to lack of insurance the record contains no evidence that she ever sought free or low-cost mental health treatment.");  *see also Crum v. Comm'r of Soc. Sec.*, 660 Fed. Appx. 449, 455 (6th Cir. 2016) (The court found that the ALJ's reliance on a gap in the medical records supported the ALJ's conclusion that an impairment was not disabling – even though plaintiff had argued that some of his non-treatment was due to lack of insurance).  Plaintiff sought treatment for her back in March 2013, and again was seen by her physician in April 2013.  These records do not demonstrate disability.  Neither do the records from the better part

of 2014, as discussed above.  The undersigned thus concludes that any error in the ALJ's treatment of the gap in medical records is harmless.

Despite determining that plaintiff's back pain was not medically determinable, the ALJ found in the alternative that her back pain was non-severe. At step two of the sequential evaluation, the ALJ must consider whether a claimant's medically determinable impairment is a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009).  The applicant bears the burden of establishing the existence within the administrative record of objective medical evidence suggesting that the applicant was "disabled" as defined by the Act.  In order to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-

workers, and usual work situations; and (6) dealing with changes in routine work settings.

As the evidence discussed above demonstrates, plaintiff has not met her burden of establishing that her back pain was a severe impairment during the relevant period because there is no evidence that she was significantly limited in her ability to perform basic work activities due to her back pain.  In any event, even if plaintiff's back pain should have been determined to be a severe impairment, the error is harmless, as discussed below.

Sixth Circuit precedent establishes that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  If the ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere. *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 at *4 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal.  But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.") (internal quotation marks

omitted); *Jackson v. Astrue*, 734 F. Supp. 2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one severe impairment at step two, the failure to identify additional severe impairments at step two was harmless error case where the ALJ considered all of the plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history.).

Here, the ALJ continued with the five step analysis, having found several of plaintiff's impairments to be severe. However, the ALJ did not discuss plaintiff's non-severe back pain impairment in assessing the RFC. As stated above, failure to consider this impairment at the remaining steps of the sequential evaluation process is error. However, in this instance, the ALJ's error is harmless. Although plaintiff complained of back pain to her doctors and sought treatment specifically for her back pain, there is no medical opinion in the record assessing functional limitations caused by back pain during the relevant period or thereafter. *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio Oct. 4, 2011) (citing *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146,151 (6th Cir. 1990) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *Kocher v. Comm'r of Soc. Sec.*, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015), *report and recommendation adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("when 'there is no evidence in the record, of any functional limitations as a

result of . . . obesity that the ALJ failed to consider,' a remand for further

resolution of this issue is unnecessary."); *Caldwell v. Berryhill*, 2017 WL 975371,

at *5 (M.D. Tenn. Mar. 14, 2017) ("Indeed, the mere presence of neck pain—even

if it is supported by objective testing—does not, without more, establish that

Caldwell was limited by it.").

　　　Where an impairment is not associated with any functional limitations in the

record, failure to discuss the impairment after Step Two of the sequential analysis

is harmless.  For instance, in *Smith v. Comm'r of Soc. Sec*, the ALJ determined that

the plaintiff's brain lesions were nonsevere based on a finding that the lesions had

not changed since 2008, and there was no evidence that the plaintiff was limited by

any neurological disorder.  *Smith,* 2016 WL 423757, at *6 (E.D. Mich. Jan. 12,

2016), *report and recommendation adopted*, 2016 WL 409316 (E.D. Mich. Feb. 3,

2016).  The ALJ did not discuss the plaintiff's brain lesions at any point in the

decision after Step Two.  *Id.*  Nevertheless, the court held that the ALJ's error was

harmless because the plaintiff's neurologist did not diagnose a neurological disease

or assess functional limitations as a result of the brain lesions.  *Id.*

　　　In this case, as the prior discussion of the medical evidence demonstrates,

there is no evidence of functional limitations between March 12, 2013 (onset date)

and December 31, 2013 (date last insured), caused by plaintiff's back pain.

Indeed, on the onset date there was no radiation of the back pain, no injury to the

back, and her pain was controlled with medication. (Tr. 294). In April 2014, a CT scan did not show significant findings, and records in June and July 2014 indicate that her pain was relieved with medication. (Tr. 314, 319, 329). Her treatment with a pain specialist (well after the date last insured) also did not reveal functional limitations. She began treatment in August 2014 (Tr. 387) including lumbar epidurals and steroid injections (Tr. 375-89), and in November 2015, and January and February 2016 she had no complaints of back pain.[7] (Tr. 390-91, 393-95, 396-98). Her pain specialist did not note any functional limitations. These records do not establish functional limitations during the relevant period. As such, any error at Step Two is harmless and remand would be futile.

>        3.      SSR 83-20

Plaintiff's argument that the ALJ did not follow SSR 83-20 lacks merit. As the Commissioner pointed out, Social Security Ruling 83-20 applies where the ALJ determines that the claimant is disabled and the question arises as to when the disability arose. *See* SSR 83-20, 1983 WL 31249. The Sixth Circuit has acknowledged that "this policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began."

---

[7] To the extent the records from the pain specialist between 2015 and 2016 may demonstrate limitations, these records are well after the date last insured. In light of the medical evidence from much of 2013 and 2014 indicating that plaintiff was not disabled during the relevant period, the 2015 and 2016 records have no bearing on whether plaintiff was disabled in 2013.

*Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).  Where there is no finding that the claimant is disabled, "no inquiry into onset date is required."  *Id.*  Here, the ALJ did not find plaintiff disabled prior to the date last insured and thus Social Security Ruling 83-20 has no bearing on her case.  *See also Monville v. Comm'r of Soc. Sec.*, 2017 WL 4081854, at *3 (E.D. Mich. Sept. 15, 2017).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 21, 2018             s/Stephanie Dawkins Davis
                                  Stephanie Dawkins Davis
                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 21, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                  s/Tammy Hallwood
                                  Case Manager
                                  (810) 341-7850
                                  tammy_hallwood@mied.uscourts.gov